## Case No. 1,027.

BARNEWALL et al. v. JONES et al.

[14 N. B. R. 278.]

District Court, S. D. Alabama. June Term, 1876.

BANKRUPTCY—ASSIGNEE—SETTING ASIDE CONVEYANCES.

[1. An assignment by one member of a firm of all his individual property for the benefit of his individual creditors, and with directions to distribute the balance, if any, among partnership creditors, if made within six months before the filing of a petition in bankruptcy against the firm, may be set aside at the suit of the assignee in bankruptcy, under the thirty-fifth section of the bankrupt act. (Rev. St. § 5129; 14 Stat. 534,) as being made with intent to prevent the distribution of the property under that act.]

[2. Such an assignment does not come within that clause of the thirty-fifth section of the act, (Rev. St. § 512; 14 Stat. 534,) which allows only four months for the setting aside an assignment made with a view to give a preference to a creditor who knows the debtor to be insolvent.]

[Cited in Crump v. Chapman, Case No. 3,455.]

[3. The rights of the assignee in bankruptcy under this thirty-fifth section (14 Stat. 534) are not affected by the amendments thereto of June 22, 1874, (18 Stat. 180,) when the adjudication of bankruptcy was passed before the amendments were adopted.]

[Cited in Warren v. Garber, Case No. 17,196.]

[In bankruptcy. Proceedings by Henry Barnewall and William C. Gaynor, assignees of Crawford, Walsh, Smith & Co. and Walsh, Smith, Crawford & Co., and others, against William G. Jones, William D. Dunn, and James Crawford, to recover property passed by assignment by Crawford to Dunn and Jones, in trust—First, for the benefit of his creditors; and. second, for the benefit of the creditors of Crawford, Walsh, Smith & Co. and Walsh, Smith, Crawford & Co., of which firms he was a member. Heard on bill, answer, and agreement of counsel. Decree for complainants.]

E. H. Grandin, for complainants.

R. H. Smith, for defendants.

BRUCE, District Judge. The case is submitted for final decree upon bill, answers of defendants, Wm. D. Dunn, Wm. G. Jones, and James Crawford, and the agreement of counsel in writing, by which the complainants dismiss their bill as to the other defendants named therein, and no exception is taken to such dismissal or to the want of proper parties.

The important facts to be borne in mind are stated in agreement of counsel on file, and are, that the proceedings in bankruptcy were filed June 3, 1874, and the deed of assignment referred to in the bill of complainants was made, executed, and recorded January 31, 1874. The bankruptcy proceedings were commenced upon the petition of Henry Hall, against Crawford, Walsh, Smith & Co., of Mobile, and Walsh, Smith, Crawford & Co., of New York, of both of which mercantile firms James Crawford was a member, and an order of adjudication of all the persons composing said firms, bankrupts, followed upon the 12th day of June, 1874. The complainants were subsequently duly appointed and qualified as their assignees in bankruptcy.

The character of the indenture or deed of assignment of James Crawford to Dunn and Jones will be best determined by a reference to the instrument itself, which is found as an exhibit to the bill. It is clearly an assignment of the individual property and estate of James Crawford (except such as is by law exempt from execution) to said Dunn and Jones, in trust and for the uses and purposes therein mentioned. The question is as to what this transaction was in legal effect. It is not important, in the view I take of the case, to inquire what these parties intended. However good the motives of James Crawford in making the transfer, or of Messrs. Dunn and Jones in receiving it, and however free they may have been from any intention to commit an actual fraud upon any one is not material here. The question, however, remains as to the legal quality and effect of the transfer here in question. That James Crawford was insolvent at the time this transfer was made, and that it was made in contemplation of insolvency, is clear from the terms of the transfer itself, and William D. Dunn and William G. Jones, the transferees, must be held to notice and knowledge of everything stated in and plainly inferable from the terms of the instrument itself.

On the 3d of June following this conveyance or transfer of property, and about four months and three days thereafter, a petition in involuntary bankruptcy was filed in the district court of the United States for the southern district of Alabama, followed by an order of adjudication and the appointment of assignees, as before stated. The provisions of the bankrupt act contemplate a distribution, not only of the partnership property and assets of the bankrupts, but a distribution also of the individual property of each member of said mercantile firms. Section 36, Bankrupt Act, [14 Stat. 534.]

By the judgment of the court adjudicating James Crawford a bankrupt, the title to all his property, both real and personal, partnership and individual, except such as was exempt by law, vested, by operation of law, in his assignees in bankruptcy for the benefit of his creditors, both partnership and individual, and the conveyance or assignment by the register in bankruptcy related back to the filing of the petition in bankruptcy, to wit, June 3, 1874. See section 14, Bankrupt Act. [14 Stat. 522.] This then is the date at which the rights of the creditors of James Crawford attached to his property and became fixed and vested; and this brings me to the effect of the provisions of the 35th section of the bankrupt act. [14 Stat. 534,] upon the transfer or conveyance of the property in question.

The complainants' bill was filed December 6, 1875, long after the passage of the amendatory act of June 22, 1874, [18 Stat. 180,] but it was filed to assert the rights of the creditors under the bankruptcy proceedings which were instituted June 3, 1874. If the assignees, as the representatives of the creditors, have any rights here at all, they accrued June 3, 1874, and the question as to when they filed their bill to assert their rights is unimportant to this inquiry. If then the transfer or conveyance in question is void, under the provisions of the 35th section of the bankrupt act, then the assignees may recover the property or the value thereof as the assets of the bankrupt. There are two clauses in section 35 of the bankrupt act which may be designated as the four months' clause and the six months' clause, and it is important to inquire under which of these clauses this conveyance and transfer falls; for, if it falls within the four months' clause, it is protected because the transfer was made more than four months anterior to the institution of the proceedings in bankruptcy. If, however, this transfer falls within the six months' clause, it is not protected, because less than six months had elapsed from the making of the conveyance to the filing of the petition in bankruptcy; in fact, only a few days over four months had elapsed. How, then, shall we determine under which clause this transfer or conveyance falls? for it is admitted that it falls within one of them.

An analysis of the two clauses is necessary. In the four months' clause these words are used: "If any person, being insolvent or in contemplation of insolvency, within four months of the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him * * * makes * * * any assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, assignment, transfer, or conveyance, or to be benefited thereby * * * having reasonable cause to believe such person is insolvent, and that such * * * assignment or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it or so to be benefited." Now, the prominent idea here is that insolvent persons shall not prefer one creditor over another. If, however, they do it, the creditor takes the risk of losing what he has so acquired if proceedings in bankruptcy are instituted within four months from that time. If not instituted, he is protected in his right, though he got it by way of preference. This clause certainly contemplates transfers of property to particular persons for particular debts or liabilities, and does not contemplate such an assignment of property as we have in this case, which is a general assignment

of the bankrupt's individual property for the equal benefit of his individual creditors first, and the excess, if any, to be applied to the payment of his partnership creditors.

This is an assignment with a view to a distribution of the bankrupt's property, providing for the means and mode of the distribution, which is a very different thing from a preference to a creditor or person having a claim against him, or who is under any liability for him, such as is implied by the language of the clause under consideration. It is claimed for the defendants that the case of Gibson v. Warden, 14 Wall. [81 U. S.] 244, is conclusive on this point, and settles the question that this conveyance falls within the four months' clause. It is to be first observed that no such instrument or assignment was before the court in that case as there is here. The transaction was entirely and essentially a different one. It was a claim secured by mortgage, and the court decided that it was valid under the laws of Ohio, and that being founded upon a past consideration, it fell within the first (or four months') clause of the bankrupt act, and was thereby protected. In that case the court says: "The language employed in the first clause (the four months' clause) imports clearly that the consideration must be one growing out of a former transaction, and that the recipient must stand in the relation thus created to the other party. It is equally clear that the second clause, enlightened by this construction of the first one, must be limited to cases where the transaction was original and complete in itself at the time it occurred, and had no reference for its consideration to anything between the parties which had gone before it."

In the case before us there is no pretense even of a preference to Dunn and Jones; there was no past consideration as to them, for the relation of debtor and creditor did not exist between them and the bankrupt. So far as they were concerned, the transaction was original and complete in itself at the time it occurred, and had no reference for its consideration to anything between them (the parties) which had gone before. If, then, this assignment does not fall within the four months' clause, it does fall within the six months' clause, as a very brief examination will show.

The language of the six months' clause is much the same as the language of the four months' clause. There is the difference as to time anterior to the filing of the petition in bankruptcy, at which transfers of the kind described are protected; also the idea of preference of a creditor by the bankrupt is not in the six months' clause; but sales, assignments, transfers, to persons other than creditors are within its provisions. The prominent and distinct feature, however, of this six months' clause which brings this case within its provisions, will be seen by a reference to the language used, as follows: "And

that such payment, sale, assignment, transfer, or other conveyance, is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of the act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may receive the property, or the value thereof, as assets of the bankrupt."

Apply that language to this case in hand. Has not the insolvent in contemplation of insolvency sought to prevent his property from being distributed under the bankrupt act? He ignores the act altogether. He seeks to prevent his property from coming to his assignee in bankruptcy, by the appointment of his own trustees. It is a clear case of an attempt to defeat the object of the act, to delay the operation of and evade the provisions of the act. And such a transaction the statute denounces as void. "And when not made in the usual and ordinary course of business of the debtor (which is the case here), the fact shall be prima facie evidence of fraud."

These two clauses of the 35th section of the bankrupt law [14 Stat. 534] have a common purpose to prevent fraudulent transfers of property by an insolvent, the object being to secure the equal distribution of the property and assets of the bankrupt among his creditors, which is the prime purpose and object of the bankrupt law. But while they have a common purpose, they have distinctive differences, which may be thus stated: The four months' clause has reference to transfers with a view to a preference of one creditor of an insolvent over another, which implies a past indebtedness. The six months' clause has reference to transfers of property by an insolvent to persons other than creditors, with a view to prevent his property from being distributed under the act, and with a purpose to defeat its operation and evade its provisions.

In this case, while, as to Dunn and Jones, there was no past indebtedness, yet as to the creditors for whose benefit the transfer purports to have been made, its consideration was past indebtedness; but the distinctive feature of the transfer and that which takes it out of the four months' clause and places it in the six months' clause, is that it is a general assignment of the insolvent's individual property for the benefit of his creditors, and contemplates a distribution of his property otherwise than as provided by the bankrupt law, and is an attempt to defeat its operation and evade its provisions, and is a fraud upon the bankrupt law.

The only remaining question which I deem it necessary to consider is the effect of the amendatory act of June 22, 1874, to the bankrupt law [18 Stat. 180] upon the questions here involved. This suit was brought within two years from the time the cause of ac-

tion accrued. So that no question arises under the statute of limitation for the bringing of suits by assignees, which is limited to two years, by section 2 of the bankrupt act. If the assignees have any rights at all they accrued at the time of the filing of the petition in bankruptcy, as already stated, June 3, 1874, which was followed by an order of adjudication of June 12, 1874. The amendatory act was passed June 22, 1874. And the amendment to section 35 is prospective in its terms. Courts will not give a retrospective operation to a statute, unless it clearly appears from the language used that the lawmaking power so intended.

I am cited to the cases of Singer v. Sloan, [Cases Nos. 12,899 and 12,898,] decided by Judge Dillon, in which he holds that section 11 of the amendatory bankrupt act of June 22, 1874, amending section 35 of the original act, applies to cases brought after the amendatory act took effect, although the instrument creating the alleged preference was executed before June 22, 1874. He says: "Rights wholly given by statute are taken away by its unconditional repeal." This view of the subject and statement of the law are not satisfactory to my mind. A more correct statement of the legal proposition is found in Hamlin v. Pettibone, [Case No. 5,995,] thus: "Statutes affecting substantial rights divesting causes of action which have fully accrued, are not without express declaration or the strongest implication to be applied to past transactions."

The rule of law upon this subject is thus stated: "Where a right arises under, or is given by a statute, and it has been so far perfected that nothing remains to be done by the party, the repeal of the statute does not affect it, or an action for its enforcement."

In the head notes of the supreme court of the state of Alabama, in the case of State v. Moody,[1] December term, 1875. this is found: "The adjudication of bankruptcy is in the nature of a statute execution for all the creditors, and the assignee, as their representative, may enforce against the debtor every right a judgment creditor could enforce."

I conclude that the rights of the creditors of the bankrupt James Crawford, as represented by the assignees in bankruptcy. arose and became vested rights prior to the passage of the amendatory act of June 22. 1874, and stand independent of it, and unaffected by it. This suit is brought to assert their rights as to the property described in the transfer or conveyance to Dunn and Jones. And it appearing by the terms of the transfer that it was made by an insolvent, and in contemplation of insolvency, of which the transferees must be held to notice, the transfer is void under the 35th section of the bank-

---

[1] [This citation is probably intended for Steele v. Moody, 53 Ala. 418.]

rupt act. The decree is for the complainants, and will be drawn in accordance with this opinion.